ant was affirmed by the Court of Appeal, and Paul Lisso and others apply for certiorari or writ of review. Judgment affirmed.

White & Thornton & Holloman, for applicants. Edward Benjamin Du Buisson, for respondent.

LAND, J. For the reasons assigned in the opinion this day handed down in the case of Paul Lisso et al. v. P. O. C. Devillier (No. 16,325) 43 South. 163,[1] it is ordered that the judgment of the Court of Appeal herein be affirmed, with costs.

---

(43 South. 165.)

No. 16,230.

In re J. H. CURLEE & CO.

(Feb. 4, 1907. Rehearing Denied March 4, 1907.)

1. PARTNERSHIP — SURVIVING PARTNER — RIGHTS AND LIABILITIES.

The surviving partner of a commercial partnership liquidating its affairs is without authority to pay debts alleged to be due by the deceased individually out of the partnership funds. He is without authority to admit their correctness and pay them. The widow of the deceased partner and his succession cannot be called on to litigate such claims in the liquidation proceedings.

2. SAME—COMMISSION.

The surviving partner of a commercial partnership liquidating its affairs is without right, under the express terms of the law, to receive commission for his services as such.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, § 550.]

3. SAME—EXPENSES OF LIQUIDATION.

The preparation of the accounts of the surviving partner of a commercial firm liquidating its affairs is part of the duty of the attorney employed in the case. The liquidator is not authorized to employ a bookkeeper to make out the account, and have him paid out of the funds of the partnership as one of the expenses he is entitled to incur under the second paragraph of article 1142 of the Civil Code.

4. SAME—ACTION—EVIDENCE.

The fact that the liquidator of a partnership, who has given a check to an employé of the

partnership, has indorsed himself the check under the indorsement of the payee, does not warrant the inference that the employé was not paid through a check. Such indorsement may have been given as warranting the genuineness of the payee's signature. Though the money received by payment of the check may finally have been received by the liquidator in his transactions with the payee, the payment of the check, under indorsement of the payee, operated a payment thereof to the payee himself.

5. SAME.

When an outlay of money by the liquidator for electric lights is shown by the testimony to have resulted in benefit to the partnership, the surviving widow, who accepts the benefit of the expenditure, cannot properly complain of the outlay which produced the benefit.

6. SAME.

The widow of a deceased partner of a commercial firm, which is in the hands of the surviving partner for the purpose of liquidation, who lives in the city where the liquidation is carried on, and who, presumably, has knowledge of the situation, should, in justice to the liquidator, urge at the time any timely objection which she has to the expenditures, before, and not postpone complaints as to the expense incurred in the liquidation until after they have been incurred, and the liquidation closed.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

In the matter of the liquidation of J. H. Curlee & Co. On opposition to final account. From the judgment, the liquidator, Charles A. Dutherage, appeals. Affirmed.

Alexander & Wilkinson, for appellant. David Thompson Land, for appellee.

Statement of the Case.

NICHOLLS, J. J. H. Curlee and C. A. Dutherage carried on business together as a commercial partnership in the city of Shreveport, under the name of J. H. Curlee & Co. Curlee died in September, 1905. The business of the partnership was the conducting of a liquor saloon in a rented building. In one of the rooms gambling was carried on. The gambling feature was discontinued during the liquidation. The record does not disclose what the terms of the partnership

---

[1] Ante, p. 559.

were: but, as the house was rented for the year 1905, and the partnership had obtained a license for keeping a saloon for that time, the parties evidently contemplated a continuance of the business to the end of that year.

On September 21st, Mrs. Bettie Curlee presented a petition to the district court, in which she recited the fact of her husband's death, that he had left some property, that an administration of his succession was necessary, and that she was the surviving widow in community and entitled to be appointed administratrix. She averred that an inventory should be taken. She prayed for the taking of such an inventory, that notice of her application to be appointed administratrix be given, and that she be appointed such. Notice of the application was ordered to be given, and an inventory was ordered to be made. An inventory was made showing the property of the succession to consist of the interest of the deceased in the partnership of Curlee & Co. A detailed list of the assets of the partnership was made, and an appraisement made thereof. The value of these assets was fixed at $6,036.27.

Will Curlee, a son of the deceased by a former marriage, opposed the application of the widow for administration, and claimed it for himself. His opposition was sustained. The court appointed him administrator, and letters issued as such on October 9, 1905.

On the 23d of September, 1905, Charles A. Dutherage presented a petition to the district court, in which he alleged that he was the surviving partner of the late commercial firm of J. H. Curlee & Co., owning one-half interest in said firm; that Curlee died on the 19th of September, 1905, leaving a widow, Mrs. Bettie Curlee, and as heirs Will Curlee of Texas and Mabel, Henry, and Homer Curlee, minors, of Caddo parish, for whom a tutor ad hoc should be appointed; that the firm was largely indebted, owing at least $3,000; that a liquidation of its affairs should

be had; that by law he was entitled to be appointed liquidator of the firm on taking the oath and furnishing the bond required by law; that an inventory of the effects of the firm had already been taken at the instance of the widow showing assets in the sum of $6,000. He prayed for the appointment of a tutor ad hoc to represent Mabel, Henry, and Homer Curlee, and a curator ad hoc to represent Will Curlee, and that he be appointed and confirmed as liquidator of the firm. He was subsequently so appointed, and qualified by taking oath and giving bond.

On the 23d of September, the liquidator filed a petition, in which he averred that in the conduct of the business it was absolutely necessary for the preservation thereof that he be authorized to purchase at least 500 pounds of ice per day and at least 5 half barrels of beer and 2 boxes of pop; that such beer and pop would greatly facilitate the sale of the stock of wine, liquors, etc. He applied to be granted permission to purchase certain other mentioned articles, declaring that they were in aid of and necessary to disposing of the other parts of the stock of goods. He averred that in conducting the saloon it would be necessary for him to employ two bartenders at a salary of $15 per week each, and two porters at a salary of $8 per week each.

He prayed for authority to make such purchases and to employ such assistants. The court granted the application, directing that the purchases be made at the lowest market rate and paid for out of the funds of the firm, and that the salaries be paid for out of the funds of the firm; due account being required to be made by the liquidator.

On the 11th of November, 1905, the liquidator filed in the district court what he alleged to be a list of the creditors of the firm, with the rank of each, averring that so far as he could ascertain they constituted all of the debts. He stated he had some money on

hand, and asked to be authorized to pay out the same ratably after paying the privileged creditors. He prayed that due notice be given of the filing of the list of creditors, that after due proceedings the list be approved as the creditors of the firm, and that he be authorized to make payment to the creditors in accordance with the list. The only claim placed on the list as a privileged claim was the fee of the attorneys for the liquidation, fixed at $250. The balance of the list showed the names of ordinary creditors; their claims amounting in the aggregate to $3,327.36.

On the 25th of November, the widow in community excepted to the proceeding and opposed the homologation of the list, averring that the liquidator was duly authorized to file a tableau of debts or a final account of the partnership; that the list of creditors was neither a tableau of debts nor final account. This exception seems to have been overruled; but, if any order of court was granted therein as prayed for by the liquidator, it does not appear in the transcript.

On the 14th of December, 1905, the liquidator filed a petition, in which he averred that he had been administering the property of the firm under appointment of the court with a view of winding up such business and paying the debts thereof; that the firm owed about $3,300, and he had then on hand about $1700, leaving a balance of about $1600 and the costs and attorney's fees unprovided; that, in order to pay all the debts of said concern and finally wind up the affairs thereof, it was necessary and to the advantage of the creditors that the remaining property of the firm be sold at public auction according to law. He prayed for an order of court for the sale of the remaining assets of J. H. Curlee & Co., and that an appraisement thereof be made as a basis for the sale. This application was on the same day granted by the court, and an appraisement ordered to be made, and a commission issued to the

sheriff under this order to sell. The sheriff accordingly advertised that, on the 30th December, 1905, the remaining assets of the firm of J. H. Curlee & Co. would be sold for cash with benefit of appraisement to pay the debts of the company in liquidation.

This sale did not take place. The sheriff, on the 26th of January, 1906, by order of the attorneys of the liquidator, returned the commission unexecuted. The record does not disclose why the sale was stayed. The minutes of December 20th show that a motion was made to set aside the order of sale, but do not show who made the motion; nor do subsequent minutes disclose what disposition was made of it. On December 22, 1905, the widow in community opposed the list of debts and attorney's fees claimed, on the ground that they were not due by the firm. She prayed that her opposition be maintained and the list of debts and attorney's fees be rejected. On the same day (December 22d), D. T. Land appeared and opposed generally and specially all and singular the items of the account filed by the liquidator. He opposed specially on the ground that he had, as the attorney of the widow in community, opened the succession of Curlee, and had caused an inventory to be taken, and was acting as attorney of the succession when Dutherage caused himself to be appointed liquidator; that his services were worth $100; and that he was entitled to that sum from the liquidator as a privileged creditor. He prayed accordingly.

On January 29, 1906, the liquidator filed a petition in which he declared that he therewith presented his final account of administration of the firm; he having paid all its debts, except one to D. T. Land, awarded by judgment of court, but he had cash on hand to pay the same whenever presented. That he had not put himself down for any amount on account of his services in said matter, and left the fixing of the amount to be award-

ed to him for his services to the court. He prayed that legal notice be given of the filing of the account; that, after due proceedings, there be judgment approving the same and discharging him from any further liability. He prayed for costs and for general relief.

In the meantime, the court, on January 13, 1906, rendered a judgment in which it declared that the opposition of D. T. Land to the list of creditors be sustained so as to recognize him as a privileged creditor in the proportion that the assets of the commercial firm of Curlee & Co. bear to the total assets of the firm and succession combined, leaving the balance of his fee of $100 to be paid by the succession of Curlee. The court decreed that in all other respects said list be homologated and made the judgment of the court, and the liquidator be authorized to make payment accordingly.

On February 14, 1906, the widow in community, Mrs. Bettie Curlee, opposed the final account of the liquidator on the following grounds: First. She opposed the allowance to the liquidator of any fees or commission on the ground that he is not entitled to the same under the law. Second. She opposed each and every item of credit claimed by said liquidator, except the list of creditors and attorney's fees homologated by the court. Third. She averred that the expenses of liquidation were excessive, and not necessary to a proper liquidation. Fourth. She avers that the liquidator had not accounted for all moneys received or that should have been received, nor for all rents collected or that should have been collected or due said firm on open account.

She prayed that her opposition be maintained, and the fees claimed by the liquidator be rejected, that all credits claimed, except the homologated list of creditors and attorney's fees, be rejected, and that the liquidator be ordered to account for all moneys collected or due said firm, on open account. The case was tried on the 16th of March, 1906. On the trial, the liquidator offered to prove payment by him of $24 to Watson for services rendered by him for marking out the accounts and the inventory. The note of evidence shows that this evidence was objected to, "whereupon the plaintiff asked leave to amend, and leave was granted."

The testimony was then introduced, without objection, as was also testimony of a payment made to Bosman of $5, of $5 to the Caucasian Newspaper, and $97.20 to D. T. Land. These amounts did not figure on the account as filed. The account was not in point of fact amended to show them, and the minutes make no mention of the application to amend and the granting of the same.

The district court decreed that the opposition of Mrs. Bettie Curlee be sustained, and that the final account of C. A. Dutherage, liquidator, then on file, be amended and corrected, as follows:

> By rejecting claim of said liquidator for commissions and by rejecting the following credits claimed by said liquidator:
> J. H. Curlee, board Mullins............$13 50
> Will Curlee, board       "    ............$10 00
> Sam Watson, services preparing a/c....$24 00

That the final account as amended and corrected be approved, homologated and made the judgment of the court. The liquidator applied for a new trial, on the ground that the opposition of Mrs. Bettie Curlee was contrary to the law and the evidence.

That, as to the two items stricken from the account by the judgment, no evidence was offered in relation thereto, except the general evidence adduced by the liquidator as to the general correctness of the account. That on a new trial he could specifically show to the court that said two items were proper and legal against said estate, and should not be stricken from the account. The application for a new trial was refused.

Opponent, Mrs. Bettie Curlee, made no ap-

plication for a new trial. The liquidator appealed. Opponent, Mrs. Bettie Curlee, moved to amend the judgment so as to charge the liquidator with the following sums:

Three hundred dollars personal and family expenses of C. A. Dutherage, taken by him from the moneys of the firm while liquidator.

Five hundred dollars taken by the liquidator from the moneys of the firm as shown by check of said liquidator of date October 17, 1905, and not accounted for.

Twenty dollars rent not collected.

And she moved that the judgment be amended by rejecting the following items:

Wages: Six hundred and twenty dollars.

Electric light bills: One hundred and seventy-five dollars—and by charging the liquidator with the costs of appeal.

The account as filed showed some cash in the hands of the liquidator and some movable property. He claimed that the judgment of the court, as it reads, does not give him credit for the $97.20 paid Land, for the $5 paid to Bosman, and for the $5 paid the Caucasian. He contends that the judgment should be made to read so as to give him credit on the face of it for these amounts. He also urges that he is entitled to remuneration for the services rendered by him while liquidator, and to credit for payment by him of the amounts paid to Watson, and for the board of J. H. Curlee and Will Curlee.

## Opinion.

Opponent, in a supplemental brief filed in her behalf, not only recognizes the right of the liquidator to credit for the amount paid to Land, to the Caucasian, and to Bosman, but she denies that the court rejected them. She insists that the judgment of the court recognized them, and that therefore there was no ground for an appeal on that ground. She says that the court dealt with the account finally as an amended account, as would appear from the rejection of the particular claim of Watson approved on the trial, but which had been omitted from the account when it was filed. Rejection of that one of the four claims advanced for recognition at the same time, and under similar circumstances and conditions, shows that the other three were recognized and approved. We adopt that view of the situation. We think that must have been the original view of the liquidator, for in his application for a new trial he makes no allusion to a failure by the court to give him credit for the three items which he now claims the court intended to reject. As the only opponent before the court recognizes the liquidator to be entitled to credit for these three items, the matter involves only a question as to whether he was entitled to an appeal by reason of the court not having expressly given him credit for the particular items.

We do not think the liquidator was entitled to be credited on his account for his payment of the two amounts for board, of $13.50 and $10, which the court struck out. The liquidator was not charged with the duty of paying out of the partnership funds anything but partnership debts, and it is not pretended that these were such. It was no part of his duty to examine into and pass upon the question as to whether or not Curlee owed the claims for board which were advanced against him, nor what the amounts of the same might be. His admission that they were legally owing was made without authority to bind the widow of Curlee or his succession. They cannot be called upon to litigate those questions in this proceeding. We do not question the fact that the liquidator paid the amounts, nor do we say that he is not entitled to reimbursement. We simply say that he is not entitled to claim it in this action.

The court could not, in our opinion, have done otherwise than refuse to admit the liquidator's claim for remuneration for services.

In so far as that claim was urged for services rendered by him within the scope of his duties as liquidator and by way of commissions, they are expressly denied by law. Civ. Code, art. 1142. Assuming there may be services rendered by the liquidating partner outside of those referred to which would entitle him to remuneration, such services have not been shown to have been rendered, and their value neither declared nor proven.

Opponent resists the claim of Watson to be paid from the funds in the hands of the liquidator as if it was urged on the authority of articles 443 and 462 of the Code of Practice. She says the articles refer to auditors appointed by the court itself in a pending suit, and that such services when so rendered are to be classed as costs and paid by the party cast. She urges that Watson's services were for the sole benefit of the liquidator, who was bound to render an account and should pay for them. Harrison v. City of New Orleans, 40 La. Ann. 509, 4 South. 133.

We do not think that the claim in question is urged upon the authority of the articles of the Code of Practice referred to, but upon the second paragraph of article 1142 of the Civil Code. That article reads as follows:

"The surviving partner who has thus administered the partnership concerns and liquidated them had no right to any commission therefor. But lawful expenses incurred for the advantage of the partnership during this administration are borne by the succession in proportion to the interest of the succession in the partnership."

The liquidator claims, in view of the fact that he receives nothing himself for his services as liquidator it is right and proper that he be permitted to employ and pay parties for needed assistance rendered him in the discharge of his duties. He says he does not know how to keep books, and is as much authorized to employ Watson as he was to employ counsel. Counsel say that they themselves are not expert bookkeepers; that the

services were necessary, and the amount charged fair.

The preparation of the accounts of liquidators, syndics, administrators, etc., has always been held to form part of the duties of the attorneys of the succession. The court did not err in rejecting this claim.

We now reach the demand made by the appellee for an amendment of the judgment. We have called attention to the fact that the opponent made no application for a new trial in the lower court, but apparently acquiesced in the judgment below as correct. The district judge evidently considered that the liquidator had presented sufficient proof to maintain the correctness of his account as against the very general objections raised by the opponent. It seems, however, that the latter reserved raising her specific direct objections until she should do so by way of answer to the liquidator's appeal. We think, in justice to the liquidator, these specific objections should have been advanced at an earlier stage of the proceedings. As matters stand, it looks very much as if they were an afterthought.

The pleadings of the opponent in the lower court did not indicate to the liquidator that he was charged with misappropriating to his own use of the funds of the partnership. There were some questions asked on the trial of the opposition as to whether he had not during the period of the liquidation supported himself and family from the funds of the partnership, but there was no allusion whatever to the check of the 17th of November, 1905, drawn by the liquidator on the Commercial Bank.

The claim made in the opponent's prayer for amendment of the judgment, that the liquidator should be charged with $300 for support of himself and family pending the liquidation, has nothing to rest upon. The liquidator denied positively under oath that he

had used a cent for that purpose, and there is nothing to impeach his testimony.

Touching the check for $500, which was drawn by the liquidator on the Commercial Bank on the 17th of November, 1905, we do not know why it was filed in evidence by the liquidator. We do not think it enters, or should enter at all, as a factor in this litigation. The correctness of the liquidator's account could be proved, and was proved to the satisfaction of the trial judge, independently of that check. Appellee denies that the liquidator paid the barkeepers and porters as claimed by him. She says:

"The checks offered for that purpose were drawn to the party or bearer, in one or two instances to the party or order. They are indorsed by the party to whom payable, and also by C. A. Dutherage, liquidator. That fact is direct proof that Dutherage, as liquidator, received the money from the bank on the checks, for it is plain that as he, as liquidator, drew these checks payable to a particular person, or order or bearer, it would not be necessary for him to indorse these checks in order for the payee to get the money, and his indorsement can mean only one thing—that he received the money on the checks. His testimony that he paid his employés in checks is not true."

We do not think the fact stated warrants the inference that the employés were not paid. In the first place, the indorsement by the drawer of the check after the indorsement of the payee may have been intended as warranting the genuineness of the signature of the payee. Granting, however, that the liquidator received the money from the bank, he did so under and through the prior indorsement of the payee. The bank, in paying under such circumstances, must be held to have paid the payee himself. The amount paid the bartenders and the porters was that authorized by the court to be paid at the commencement of the liquidation. The opponent and her counsel were present in Shreveport, presumably had knowledge of the situation, and made no objection to it until after the expenditures had been made and paid. Opponent objects to the amount paid for elec-

tric lights. She evidently refers to the electric lights which were used in the room which the liquidator had rented out. We do not know what the terms of that lease were. The evidence shows that through the lighting of that room, the business of the partnership was materially increased. Opponent is willing to take advantage of the increase in the business, but seeks to repudiate the instrumentality producing the increase. Opponent makes a bitter attack upon the liquidator in having sought to sell on the last day of December, 1905, at judicial sale, what remained at that time of the stock of the partnership. As that sale was not carried out, and no injury was predicated thereon, it is unnecessary for us to discuss the subject.

In her brief opponent says (referring to the liquidator) :

"His duty is to liquidate the partnership as expeditiously as possible. This he has failed to do."

"He had no right to continue the business after Curlee's death, and to buy the property at the expense of the firm, and to charge the expenses of the running of the business to the firm."

The situation of this partnership was peculiar. Its business, as has been stated, was that of conducting a liquor saloon. The business was conducted in a building rented for the year. It had obtained a license to conduct business for a year. A large part of the stock was necessarily contained in bottles on the counters, and not easily disposed of. The partnership came to an end by the death of one of the partners at the latter end of September. Under such circumstances, the law confers upon the surviving partner (Civ. Code, art. 1138) the right of having the portion of the deceased in the partnership effects remain with his own, in order that the whole may be disposed of for the common profit in the ordinary course of business. By article 1139, the surviving partner, who has thus obtained the administration of the partnership effects, has one year from the day the administration has been given to sell these effects

according to the usual course of trade and to settle the partnership effects.

It will be seen that the course to be pursued by the surviving partner is very clearly set out, and that he has very little margin of discretion left to him. The law contemplates the continuance of the business in which the partnership was engaged for the purpose of liquidation, and the stock is directed to be sold in the usual course of business. The liquidation was, in fact, closed within a year. It was obviously the belief of all parties at the time that it was for the interest of all that the saloon should be kept up as a going concern in order to sell the stock in the usual course of trade. Opponent herself objected to its being sold in any other way. If the saloon was to be kept up as a going concern, expenses had necessarily to be incurred for that purpose. There was more or less risk in following this course, but the liquidator was not responsible for the result. If there was any feasible way of avoiding the situation, opponent should have suggested it; but she did not. She says, in general terms, that the expenditures were excessive. She made (so far as the record discloses) no complaints, and made no suggestions. Counsel of the liquidator stated in his argument to the court that, in the fall of 1905, business was paralyzed by quarantine regulations existing at that time.

We find no ground for reversing the judgment appealed from, and it is hereby affirmed, at appellant's cost.